UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOM HENDRIX,<br><br>Plaintiff,<br><br>v.<br><br>JESSE WHITE, STATE OF ILLINOIS SECRETARY OF STATE,<br><br>Defendant. | Case No. 17-cv-06467<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tom Hendrix sued his employer, Secretary of State Jesse White, alleging that White violated the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq*. *See* [1]. In his complaint, Plaintiff sought backpay, lost benefits, liquidated damages, costs, attorney's fees, and a permanent injunction that Defendant abide by the FMLA. *Id.* Defendant moved for summary judgment [18]. For the reasons explained below, this Court grants the motion.

I.  Background

Plaintiff started working for the Secretary of State's office in December 2009 as a Senior Facility Manager (Senior Manager) in the Department of Motor Vehicles (DMV). Ex. 1 ¶ 6.[1] Plaintiff was assigned to Defendant's Schaumburg facility. *Id.* ¶ 7. All Senior Managers at all DMV locations have the same duties and

---

[1] All exhibits appear in docket entry [19]. This Court also draws facts from Defendant's Local Rule 56.1 statement of undisputed material facts [20]. Plaintiff did not respond to Defendant's statement of facts or submit a statement of additional facts. Accordingly, this Court deems Defendant's statements of fact admitted, *see* L.R. 56.1(b)(3)(C); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003), to the extent that they are "supported by evidence in the record," *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

responsibilities and all report to Tom Benigno, the Deputy Secretary of State. Ex. 1 ¶ 5; Ex. 2 ¶¶ 2–4.

Before the summer of 2015, Benigno had, on occasion, received complaints about Plaintiff's behavior. Ex. 2 ¶ 6. That summer, Benigno also received a letter signed by multiple employees working under Plaintiff at the Schaumburg facility. Ex. 2 ¶ 7. The letter raised various concerns, including complaints that Plaintiff's conduct created a hostile work environment. *Id.* The Schaumburg employees asked Benigno to address the situation with Hendrix or, alternatively, to transfer Plaintiff out of the Schaumburg facility. *Id.*

On August 4, 2015, Benigno met with several members of the management team to discuss the Schaumburg employees' letter and complaints. Ex. 1 ¶ 3. Plaintiff, who (unbeknownst to Benigno or anyone at the Secretary of State's office) had just begun a period of FMLA leave, was out of the office that day, but participated by telephone. Ex. 2 ¶ 9; Ex. 4 ¶ 4. At the meeting, Benigno told Plaintiff about the specific complaints in the letter and advised the group that he was troubled by both the content of the letter and the fact that so many Schaumburg employees appeared to have issues with Plaintiff. Ex. 2 ¶ 10; Ex. 4 ¶ 6. After a discussion about the complaints, Benigno informed Plaintiff that things at the Schaumburg facility needed to change. *Id.* Benigno determined after the meeting that the best course of action was to transfer Plaintiff to a new location, though he did not tell Plaintiff about the transfer at that time. Ex. 2 ¶¶ 11–12.

Some weeks after Benigno's meeting, Stephen Roth, Director of the Department of Personnel for the Secretary of State, learned that Plaintiff was requesting FMLA leave for the period beginning August 3, 2015 through September 9, 2015. Ex. 1 ¶ 8. Roth approved Plaintiff's FMLA request on September 9, 2015, and notified Plaintiff of that approval. Ex. 1 ¶ 9. Plaintiff returned to work that same day, providing a Return to Work Certification (RTW) from his physician stating that he was cleared to return to work with "no restrictions." Ex. 1 ¶ 10.

Despite Benigno's decision to transfer Plaintiff, when Plaintiff returned to work on September 9, he resumed his job as Senior Manager at the Schaumburg DMV facility; he kept the same responsibilities and received the same pay and benefits as before his leave. Ex. 1 ¶ 11; Ex. 2 ¶ 14.

On September 15, Benigno informed Plaintiff of the decision to transfer him from the Schaumburg facility to the Naperville facility, and that the transfer would be effective September 22, 2015. Ex. 1 ¶ 12; Ex. 2 ¶ 15; Ex. 3 at SoS1313. Although Plaintiff would have received the same pay and benefits at the Naperville facility, Ex. 1 ¶ 13; Ex.2 ¶ 14; Grp. Ex. 3 at SoS920–21, the transfer would have inconvenienced Plaintiff, as the Naperville facility was almost 20 miles farther from his home than the Schaumburg facility. Ex. 5.

Plaintiff never actually transferred to the Naperville facility, however. Ex. 1 ¶ 14; Ex. 2 ¶ 18. Instead, Hendrix stopped coming to work after September 17, 2015, and, on September 24, 2015 (two days after the scheduled transfer), he requested a second FMLA leave, retroactive to September 18, 2015. Ex. 1 ¶ 14; Ex.

3

2 ¶ 18; Grp. Ex. 3 at SoS446–50. His request was again approved. Ex. 1 ¶ 14; Ex. 2 ¶ 18; Group Ex. 3 at SoS446. Plaintiff remained out on leave from September 18, 2015 until September 6, 2017, when his physician cleared him to return to work with certain permanent restrictions. Ex. 1 ¶ 15. When Plaintiff returned to work, he resumed his job as Senior Manager and was transferred to the DMV facility in Elk Grove Village, a facility closer to his home than either the Naperville or the Schaumburg facilities. Ex. 1 ¶ 16; Ex. 2 ¶ 19; Grp. Ex. 3 at SoS482.

The day after returning to work, Plaintiff filed this lawsuit, alleging that Defendant violated his rights under the FMLA. *See* [1]. In an initial status report, Plaintiff clarified that his FMLA claim is based upon allegations that Defendant failed to return him to the same position or a substantially equivalent position when he came back from FMLA leave. *See* [7] ¶ 1(d). Defendant moved for summary judgment [18], arguing that Plaintiff's claims are barred by the Eleventh Amendment and fail as a matter of law because, after his periods of leave, Plaintiff returned to the same or an equivalent position. Plaintiff did not respond to the motion.

II. <u>Legal Standard</u>

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at

4

248. To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014). At summary judgment, courts evaluate evidence in the light most favorable to the non-moving party, and must refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

III. Analysis

This Court turns first to Defendant's Eleventh Amendment challenge. The FMLA grants employees up to 12 weeks of unpaid leave every year to care for themselves (self-care) or family members (family care), and to attend to certain family needs such as pregnancy, childbirth, and adoption. 29 U.S.C. § 2612(a)(1). Although Congress created a private right of action for damages and equitable relief under the FMLA, 29 U.S.C. § 2617(a)(2), in *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012), the Supreme Court held that Congress did not validly abrogate the states' sovereign immunity as to the self-care provision, *id.* at 43–44. Here, both of Plaintiff's periods of leave related to self-care. *See* Roth Decl., Exhibit C (Medical Leave Certification for the period beginning 8/3/15 and ending 9/8/15, indicating Plaintiff's diagnosis of depression and back pain due to degenerative disc disease; Leave of Absence Request form dated 9/9/15 indicating "self" as the type of leave requested); Exhibit E (Leave of Absence Request form

5

dated 9/18/15 indicating "self" as the type of leave requested). As a result, as Defendant correctly notes, any claim for damages would be barred. *See Coleman*, 566 U.S. at 35 . Because Plaintiff seeks prospective injunctive relief, as well as damages, however, this Court will not grant summary judgment on this basis alone. *See Kroll v. Bd. of Trustees of Univ. of Illinois*, 934 F.2d 904, 908 (7th Cir. 1991) (official-capacity actions may not be barred by the Eleventh Amendment insofar as they request prospective relief such asan injunction or "ancillary" monetary damages).

This Court next addresses the merits of Plaintiff's claim. The FMLA prohibits an employer from interfering with, restraining, or denying the exercise of or the attempt to exercise, any right provided under 29 U.S.C § 2611. *See* 29. U.S.C. § 2615(a). To prevail on an FMLA interference claim, Plaintiff must show that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *See, e.g., Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).

At this point in the proceedings, Plaintiff satisfies the first four elements of an FMLA interference claim. Under the FMLA, an individual is an "eligible employee" if he or she has been employed for at least 12 months and has performed at least 1,250 hours of service for the employer during the previous 12-month period. *See* 29 U.S.C. § 2611(2)(A). Plaintiff satisfied these requirements at the

time he requested leave, *see* Ex. 1 ¶¶ 6, 7; [19-1] at 40, and, indeed, Defendant does not dispute that Plaintiff was eligible for FMLA protections.

Second, Defendant is a qualified employer because it engages in an activity affecting commerce and employs 50 or more employees within 75 miles for each working day of 20 or more calendar weeks in the preceding calendar year. *See* 29 U.S.C. § 2611(4)(A). Again, Defendant does not dispute this element. Nor does Defendant dispute that Plaintiff requested leave for a "serious health condition."

The fourth element requires the employee to provide sufficient notice to the employer of his intention to take leave. Notice is sufficient "if the employee gives the employer enough information to put the employer on notice that FMLA-qualifying leave is needed." *See Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998). The record shows that Plaintiff requested leave twice, once for the period beginning August 3, 2015 and ending September 9, 2015, and once for the period beginning September 18, 2015. In both cases, Plaintiff submitted his leave request after the leave period began. But Defendant does not dispute that it had sufficient notice, and in both cases, Defendant approved Plaintiff's leave requests.

Plaintiff cannot, however, establish the fifth element of an FMLA interference claim, as the record shows that Defendant never denied Plaintiff any FMLA benefits. In fact, Defendant approved both of Plaintiff's leave requests. Ex. 1 ¶¶ 9, 14; [20] ¶¶ 19, 28, 30, 32. Accordingly, Plaintiff's FMLA interference claim fails as a matter of law. *See, e.g., Curtis v. Costco Wholesale Corp.*, 807 F.3d 215,

223 (7th Cir. 2015) (affirming summary judgment for employer where plaintiff requested and received leave under the FMLA).

Any retaliation claim—to the extent that Plaintiff attempts to state such a claim in his complaint—would similarly fail. To prove retaliation under the FMLA, Plaintiff would have to show that: (1) he engaged in statutorily protected activity; (2) his employer took an adverse action against him; and (3) the protected activity caused the adverse action. *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018); *Pagel v. TIN, Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). Initially, the record shows that Defendant took no adverse action against Plaintiff. Although Benigno determined that Plaintiff should be transferred from the Schaumburg facility to the Naperville facility, that transfer (to the same position, with the same pay and benefits, but with a longer commute) cannot qualify as an adverse action (absent some further showing not present here). *See, e.g., Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009) (any adverse action giving rise to an FMLA retaliation claim must be "materially adverse"; "trivial harms" will not suffice). More importantly, however, the transfer to Naperville never occurred. Indeed, in the end, Defendant transferred Plaintiff to a facility that was closer to his home, where he kept the same job title and responsibilities, and the same pay and benefits.

Moreover, nothing in the record suggests that the planned transfer had anything to do with Plaintiff's exercise of his FMLA rights. On the contrary, the unrebutted evidence shows that Defendant contemplated the transfer (which never occurred) solely because of Plaintiff's behavior in the workplace and the hostile

8

environment his behavior created at the Schaumburg facility. Ex. 2 ¶¶ 10–12 Accordingly, to the extent Plaintiff asserts an FMLA retaliation claim, Defendant must prevail as a matter of law on that claim as well.

IV. Conclusion

For the reasons explained above, Plaintiff cannot prevail on his FMLA claim, whether he asserts an interference claim or a retaliation claim. Accordingly, the Court grants Defendant's motion for summary judgment [18]. The July 11, 2018 motion hearing date is stricken, and the parties need not appear. The Clerk is directed to enter judgment in Defendant's favor. Civil case terminated.

Dated: July 11, 2018

ENTERED:

_____
John Robert Blakey
United States District Judge